McIlvaine, C.J.
The action below was brought under the 14th section of the act of March 12, 1831, as amended April 6,1866, entitled “an act for the prevention of gaming ” (S. & S. 378), which provides that “ said fines and costs and said damages and costs,” — to wit, all fines and costs .assessed for any violation of the original act (except the fines imposed by sections 6 and 7), and all damages and ■costs recovered by any person or persons in actions brought under the act to recover back money lost at gaming — “ shall be and remain a lien on the real estate and building used and occupied for gaming contrary to the act” so .amended, “ and in which the money sought to be recovered shall have been lost, until said fines and costs and damages •and costs be fully paid; provided, the owner of the real estate or building, so used and occupied, rented the same, or knowingly permitted it, to be used for the purpose of •gaming.”
Section 2 of the original act (S. & O. 664) authorizes any person who, by playing at any game or games, shall lose to •any other person, any sum of money or other thing of value, and shall pay or deliver the same to the winner, to sue for and recover the money or thing of value so lost and paid or delivered, from the winner thereof. And section 9 provides, “ that if any person or persons shall suffer any game or games whatsoever to be played for gain, upon or by means of any gaming device or machine of any denomination or name, in his, her, or their house, or in any outhouse, booth, arbor, or erection, of which he, she, or they have the care or possession,” on conviction, etc.
It is in view of this state of legislation that the sufficiency of the petition below must be determined.
1. It is claimed by demurrant that the petition is defective in not alleging that the judgment against Sawyer was for money, in fact, lost and paid by the plaintiff- to Sawyer ;at gaming; and in not stating the amount so lost and paid.
*111 The petition does allege that the judgment recovered was for $399.16 and costs; and that the suit in which the judgment was recovered was brought against Ripley and Sawyer to recover, under the act of March 12, 1831, money staked and betted by the plaintiff with them on a game called faro, and that the judgment so recovered against Sawyer was for the amount found by the court to have been staked and betted by the plaintiff with Sawyer on said game, and won by Sawyer and paid over to him by the plaintiff. Upon this point the allegations in the petition are sufficient.
The action was brought to enforce the lien of this judgment, under the statute, against the real estate described in the petition. To entitle the plaintiff to the relief sought, he must allege, among other things; the recovery of the judgment; the amount thereof; that it was for money lost by him at gaming, and paid to the winner, and that the gaming was contrary to the act of 1831. These allegations, if denied, may be proved by the record of the judgment, and when so proved, the record is conclusive of the facts stated. Hence, the allegation in the petition that the court which rendered the judgment, found that the damages recovered were for money lost by the plaintiff', and paid by him to the defendant at gaming, contrary to the statute, is sufficient, without other allegation that the money for which the judgment was rendered was, in fact, lost and paid, etc.
2. But it is claimed that Binder, not having been a party to the action against Sawyer, is not concluded or affected by any allegation, finding, or judgment made or rendered in that case.
To the extent that we have above indicated, that the record in Sawyer’s case may be conclusive, the rule here contended for by plaintiff in error does not apply. No doubt the general rule is, that the record of a judicial proceeding does not conclude any person who was not a party or a privy to it. But it is also true that such record concludes not only parties and privies, but strangers likewise, as to the fact that such proceedings were had, and that *112 such judgment was rendered. In this case, we think the record of the judgment against Sawyer concludes Binder as to the fact that the judgment was rendered, and as to the-amount of the judgment, and as to the cause of action upon which it was rendered.
To entitle the plaintiff to the relief sought in this case, it is-necessary, however, that he aver, and prove otherwise than by the record in Sawyer’s case, the following facts, to wit:; That the real estate and building described in the petition were used and occupied for gaming contrary to the act of 1881; that the money sought to be recovered by the enforcement of the lien of this judgment, was lost therein; that the defendant, Biuder, was the owner thereof at the time, and that he rented, or knowingly permitted, the sámelo be used for the purpose of gaming.
If these facts (which are sufficiently stated in the petition) be found against Binder, the lien of the judgment rendered in Sawyer’s case may be enforced against Binder’s, property without infringing the rule, that no person shall he deprived of his property without due process of law.
3. It is also claimed that the petition does not show that the property therein described had been “ used and occupied” contrary to the act of 1831.
We do not understand the 14th section, as amended, in-1866, to mean that the lien shall attach only to such real estate and buildings as may be “used and occupied” contrary to the act of 1831; but that the lien attaches to property in which “ gaming contrary to the act” is knowingly permitted by the owner. Tet, if the true construction of the section be otherwise, we would still hold that the.use and occupation, as averred in the petition, were contrary to the 9th section of the act. Under either construction, the averment, that at the time the said game was played, and for a long time before, Binder, the owner, knowingly permitted said room to be used by Sawyer for the purpose of gaming-for money, and for said game of faro with the plaintiff, is,, on general demurrer, a sufficient averment of the unlawful-use and occupation of the building.
*113 The facts thus stated show a use and occupation contrary to the act of 1831.
Without special averment, the court will take notice of the provisions of the act.
4. It is also objected that the case made in the petition is not of equity cognizance; that the lien sought to be enforced, if it exist, is purely statutory; and if it does not exist, it can not be created or declared by a court of equity; that courts of equity will not aid in the enforcement of penalties or forfeitures.
Judgment liens can be enforced ordinarily by exeeptions at law; and where an adequate remedy exists at law, courts of equity will not lend their aid. But this rule .can not apply in this case. Admitting that the judgment in favor of plaintiff against Sawyer, is a lien on the real estate of Binder, between whom and Sawyer there is no privity of estate, it is difficult to see how the lien could be enforced by ordinary execution. It appears, therefore, that if the-plaintiff is entitled to any remedy, at all, it. must be by action, and not by execution.
Let it be conceded that if the judgment against Sawyer is a lien on the real estate of Binder, such lien exists solely by force of the statute, and if there -be no such lien by force and operation of the statute, a court of equity can not create or declare a lien in favor of the judgment. ,
There can be no doubt, however, that the legislature may, in the exercise of its general police powers, prospectively declare a lien in favor of a judgment, as it has undertaken to do by this statute, on property used with the knowledge and consent of the owner, to the injury of another, or of the state, although the judgment for such injury be rendered only against those who were wrong-doers jointly with the owner.
But granting the existence of such power in the legislature, it does not follow that the owner can be deprived of his property by an execution, without a day in court. Not that he can be heard to deny the power of the legislature *114 to declare the lien of the judgment in such case; but that he may deny his participation in the wrongful use of his property — a fact essential to the existence of the lien, and which can not be judicially determined against him, in his absence, and without opportunity of being heard. The right of the owner, however, to have his day in court, does not affect the existence or Validity of the lien created by the statute. For, when the participation of the owner in the wrong is thus judicially ascertained, no new lien is declared ; but the lien of the statute continues, as it existed from the date of the judgment.
The question, therefore, resolves itself thus: Courts must take cognizance of such case, and, upon finding the conditions named in the statute against the owner of the real estate, enforce the lien; or else the statute, which declares the lien, becomes substantially, if not wholly, nugatory. The latter alternative should not be adopted unless it be clear the former can not be maintained.
The action thus instituted, not being for the purpose of creating a lien and thereby enforcing a penalty or forfeiture, but for the purpose of identifying the property upon-which the lien already existed, and for the purpose of ascertaining judicially, as against the owner, the existence of the facts upon which- the statute declares the lien, we see no serious objection to the jurisdiction of the court in such action.
By declaring the lien, the legislature evidently intended to give the right to enforce it; and as it can only be enforced by action, it was certainly intended that a right of action should also accrue to the judgment creditor. And as the kind of action was not designated by the statute, nor the court in which it should be prosecuted, section 605 of the' code applies, which provides, “ that where the statute gives an action, but does not designate the kind of action, such action shall be held to be the civil action of the «code.”
Judgment of District Court affirmed, and cause remanded *115 to Common Pleas for further proceedings, with instructions to overrule demurrer to the petition.
Welch, White, Rex, and Gilmore, JJ., concurred.